White, J.
The order of which the relators, Welch and •Steinbeck, seek payment from the township treasurer, though made negotiable in form is not so in fact. It is a .statutory order, which the clerk of the board of education is authorized to draw under the direction of the board; but the statute does not authorize him to impart to it the negotiable quality of commercial paper. Nor does the written acceptance of his predecessor in office impose any greater obligation on the defendant to pay the order than he would have been under, had it been presented without such indorsement. The validity of the order is, therefore, as fully •open to inquiry in the hands of the relators as it would have been in the hands of Yanhook, the payee, had he retained it.
The township board of education is by the statute con *148 stituted a body politic and corporate, and as such is authorized to contract and be contracted with, to sue and be sued,, plead and be impleaded with, in any of the courts of the state. They are invested, in their corporate capacity, with the title, care, and custody of all school-houses, schoolhouse sites, school libraries, apparatus, or other property belonging to the school districts within the limits of their jurisdiction, with full power to control the same in such manner as they may think will best subserve the interests-of common schools and the cause of education.
It is made the duty of the board to hold regular sessions, at certain specified times and .places, for the transaction of any business which may be necessary in relation to the-public schools of the township, as well as to hold such special meetings at other times and places within the township, as they may think desirable for the transaction of such business. At all such meetings they are required to appoint one of their number to the chair, and in case of the absence of the township clerk, they are authorized to appoint one-of their number to serve temporarily as clerk. 2 S. & C. 1354.
School funds in the hands of the township treasurer can-only be paid out on the order of the clerk of the board of education, under the direction of the board, except in the case of paying teachers for their services. Id. 1354.
The question is, does the alleged agreement which was-signed by a majority of the members of the board, and which was the only authority of the clerk for issuing the-order, constitute a direction by the hoard. It seems clear to-us it does not. The authorizing a debt to be contracted by the board of education, and the directing its payment out-of the public funds, are corporate acts. No individual member of the corporate body, nor any number of such individual members acting separately, can bind the corporation. Ang. & Am. on Corp. 232.
In the present ease there was no authority from the board to execute the alleged agreement. There was no meeting of the members of the board on the subject. The signing *149 by each of the members of the board who did sign, was his individual and separate act, and unless ratified by the corporate body imposed no obligation upon it. But there was no ratification. On the contrary, the board treated what had been done as of no legal validity, and as being a mere proposition to sell the mapa, etc., to the board. The refusal of the treasurer to pay the order was at the instance of the board.
As to what would have heen the rights of the treasurer had he paid the order, it is'unnecessary to inquire. It is •sufficient for the present case that, under the facts disclosed, he was not bound to make such payment.

Peremptory writ refused.